

FILED

Nov 16 2018, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Heather M. Schuh-Ogle
Thomasson, Thomasson, Long &
Guthrie, P.C.
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ashley Reid,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

November 16, 2018

Court of Appeals Case No.
18A-CR-493

Appeal from the Bartholomew
Superior Court

The Honorable Kathleen Tighe
Coriden, Judge

Trial Court Cause No.
03D02-1702-CM-902

**Brown, Judge.**

[1] In this interlocutory appeal, Ashley Reid appeals the trial court's order denying her motion to suppress evidence. Reid raises two issues which we consolidate and restate as whether the trial court erred in denying her motion to suppress. We affirm and remand for further proceedings.[1]

## Facts and Procedural History

[2] On February 15, 2017, the State charged Reid with: Count I, operating a vehicle while intoxicated endangering a person as a class A misdemeanor; and Count II, operating a vehicle with an ACE of .15 or more as a class A misdemeanor.

[3] On October 30, 2017, Reid filed a motion to suppress all oral and written communications, confessions, statements, or admissions alleged to have been made by her, as well as any test results arising from a July 29, 2016 incident. It stated in part that Officer James Paris of the Columbus Police Department responded to a report of a possible intoxicated driver at a West Ridge residence, that "[u]pon arriving, Officer Paris immediately began questioning Ms. Reid and giving her directives" and "subjected her to coercive and accusatory questioning," and that, without Reid's statements, he "lacked probable cause to request field sobriety tests, a chemical test, or a warrant for a blood draw." Appellant's Appendix Volume II at 34. It also stated:

---

[1] We heard oral argument at the University of Evansville on November 1, 2018. We thank the entire University administration, faculty, and students, for their gracious hospitality. We also thank counsel for their informative and engaging oral advocacy.

There was little to no elapsed time between the unlawful search and seizure and the acquisition of the evidence, and there were no intervening circumstances. After questioning [Reid] with no advisement of her *Miranda* rights, Officer Paris immediately ordered [Reid] to perform field sobriety tests, and immediately following those, read her the "implied consent" law. When she declined, he immediately requested a warrant.

*Id.* at 35.

[4] On December 4, 2017, the trial court conducted an evidentiary hearing on the motion, at which it heard the testimony of Officer Paris and admitted and played, as State's Exhibit 1, his body camera recording from the July 29, 2016 incident. Officer Paris testified that he was dispatched at 2:09 a.m. "as a possible intoxicated driver or disturbed (garbled)," and that:

I can't remember exact terminology dispatch used. A caller, a Stanley Reid, stated that he had heard a loud noise outside his residence, looked outside and saw his wife, [Reid], staggering in the driveway. Dispatch relayed that he wasn't sure what the noise was but believed she struck something with her vehicle.[2]

Transcript at 5-6. He stated that he proceeded to the scene without his lights or sirens activated, and saw two women in the driveway along with a vehicle with damage to the rear passenger-side bumper and a flat front passenger-side tire with its rubber "shredded around the wheel." *Id.* at 8. He testified that one of

---

[2] Officer Paris's body camera recording begins with his statement that "we got a call of a possible traffic accident up here . . . a vehicle struck another vehicle." State's Exhibit 1 at 0:01-0:13.

the individuals identified herself as Reid[3] and that he "[i]mmediately noticed that she was intoxicated. She was unsteady on her feet, had blood shot [sic] eyes, [and] had a strong odor of alcoholic beverage about her person," which "became stronger as she spoke . . . ." *Id.* at 6-7. His body camera recording indicates that he made contact with the two women, that they stated "that was not us" when he informed them of a "call of a possible traffic accident up here . . . a vehicle struck another vehicle," and that, after Reid identified herself, she answered affirmatively when asked "is this your vehicle" and "did you just get home." State's Exhibit 1 at 0:01-0:13, 0:23-0:31.

[5] When questioned about his subsequent conversation with Reid, Officer Paris stated:

> I had her step to the rear of the vehicle where the damage was so I could speak to her and then reference the damage.[4] Inquired what she had struck with the vehicle, an open ended what did you hit I believe was the question. She denied having struck anything. I referenced the damage. She said it was old damage that it happened at Walmart and that it did not happen, that it had been there for some time.

---

[3] When asked at the hearing about his interaction with the second woman, Officer Paris stated that "at one point she started to approach us as I was trying to talk to [Reid] and I asked her to step back just as an officer[] safety issue." Transcript at 9.

[4] The body camera recording indicates that, before asking "what did you hit," Officer Paris stated to Reid "walk back here for me please," and "do me a favor and go ahead and first of all put out your cigarette please. Thank you." State's Exhibit 1 at 0:55-1:15.

Transcript at 8. He indicated that he did not believe Reid's explanation and stated "it's a plastic type bumper and there was a hole in it, it was cracked, dented in, and it appeared to be extremely fresh. It was clean, no dust or dirt on it." *Id.* at 7. He stated "[o]h yes absolutely I can" when asked if, based on his experience, he was confident in his ability to look "at damage to tell if it's fresh or old . . . ." *Id.* When asked if Reid had stated she had driven the vehicle, Officer Paris answered affirmatively and testified:

> After we had a discussion about the damage on the rear bumper . . . I had her kind of step around to the side and pointed out the damage to the tire and I said how did this happen? Oh that did happen tonight I struck a curb. She said struck a curb either at or near Circle K and that was my first indication that she had been the operator of the vehicle when she said I struck a curb.

*Id.* at 9.

[6] Regarding the damage, the body camera recording reveals the following conversation between Reid and Officer Paris:

> Reid: It's been there.
>
> Officer Paris: That's been there? No ma'am. That's some brand-new damage right there.
>
> * * * * *
>
> Officer Paris: I've done this job for a long time –
>
> Reid: That's fine.
>
> Officer Paris: Okay, and I know when I'm being lied to.
>
> Reid: Okay.

Officer Paris:  Okay.  I'm being lied to.  This vehicle has struck something.

Reid:  No, that's been like that.

Officer Paris:  And this vehicle has struck something recently. Okay.  Where have you been tonight?

Reid:  Went uptown.

Officer Paris:  Uptown? Uptown Columbus?

Reid:  To the Circle-K and then I went to the bar . . . .  Yeah, but I didn't hit anything.

Officer Paris:  When did that accident happen?

Reid:  Sir, this happened –

Officer Paris:  When did it happen?

Reid:  – a while back.

Officer Paris:  Okay.  What's a while back?

Reid:  About a month ago.

Officer Paris:  About a month ago, okay.  Was it reported?

Reid:  I don't think so.

Officer Paris:  You don't think so?

Reid:  No.  I don't – I didn't.

Officer Paris:  I'm getting a whole lot of I don't think so's and –

Reid:  That's fine.

Officer Paris:  No, it's not fine.  It's – it's impeding my investigation, okay.

Reid: Okay. That's been like that. And I didn't – it happened at Wal-Mart after I got off work.

State's Exhibit 1 at 1:11-2:49. After some conversation in which Officer Paris indicated that he had received a "call of a possible traffic accident," Reid asked "where," he responded "here," she stated, "no I didn't do anything, sir," he inquired "did you just drive this vehicle here," and the following exchange occurred:

Reid: I drove it here and drove into the driveway.

Officer Paris: Okay.

Reid: Yeah. I did not lie.

Officer Paris: How long ago did the damage happen to your front tire?

Reid: It's been about – the front damage? I drove like that here. It happened earlier this evening.

Officer Paris: Oh, that happened earlier this evening –

Reid: Yeah, that did, yes, and I'm not going to lie about that.

Officer Paris: Where did that happen at?

Reid: That happened earlier.

Officer Paris: Where did that happen at?

Reid: Circle-K.

* * * *

Officer Paris: So if I go and have them pull video tape it will show you hitting something over there?

> Reid:  Probably a median.  And then I left it and I asked for help.

> \* \* \* \*

> Reid:  The median earlier and I came home on that tire.  Yes.

*Id.* at 3:02-4:42.   The body camera recording also reveals that Reid answered "about half an hour ago" when asked "how long ago did you get here," and "not since I've been home sir" when asked "have you consumed any alcohol[ic] beverages since you've been home," at which point Officer Paris asked Reid to leave the driveway and step in front of his patrol vehicle.  *Id.* at 5:10-5:30.

[7] Officer Paris further testified that he proceeded to perform standardized field sobriety testing and Reid failed three separate tests, that "he read her Indiana Implied Consent" after she "tested a .169 on a portable breath test," and that she refused to submit to a chemical test.  Transcript at 10-11.  He testified that he placed her in handcuffs and transported her to Columbus Regional Hospital, and that he then filed for a search warrant which was granted.  When asked to estimate how long the interaction lasted, "from the time you arrived at the residence to the time she refuses the chemical test," he responded "[u]ntil she actually refused the test probably no more than ten (10) minutes, twelve (12) minutes maybe."[5]  *Id.* at 11.

---

[5] The body camera recording reveals that approximately sixteen and one-half minutes passed between Officer Paris's first statements to Reid and her refusal to take a chemical blood alcohol test.

[8]     During cross-examination, in response to whether Reid was free to leave during his questioning of her, Officer Paris testified:

> It was an investigatory stop up to the point that she had admitted that she was driving the vehicle and it was obvious to me that she was intoxicated, if she would have walked away, frustrating as it would have been, she would have been free to walk away, yes[.]

*Id.* at 14.  When asked if Reid was free to leave "before or after you explained . . . that her saying that I don't know or I don't think so was impeding your investigation," Officer Paris stated in part:

> [W]hen I had developed that or had determined that she had driven the vehicle she made [sic] privy [sic] made the statement that she drove to the residence and that she drove the vehicle during when she had damaged the tire it was at that point that I would say that she was not free to go.

*Id.* at 15.

[9]     During recross-examination, Reid's counsel asked "[s]o there's no actual time frame given for when it happened, isn't that true, earlier could be a variety of things," the prosecutor objected, and the following exchange occurred:

> [Prosecutor]:  I don't see what this has to do with the question here is whether [Reid] was in custody.  It doesn't have nothing to do with the time frame.  The only thing we're talking about is was she in custody and therefore do her statements come in.  I don't think the actual pin point of the officer opinion is relevant at least not at this hearing.

[Reid's Counsel]: Your honor, I think the probable cause affidavit indicates that she said she was driving and had been drinking and I think that when she was driving is highly relevant and when she had been drinking or whether she had been drinking is highly relevant to whether the probable cause affidavit is valid.

[Prosecutor]: Perhaps but that's what's being questioned. You're not questioning the probable cause affidavit. The probable cause has already been found. We're questioning the Motion to Suppress which [sic] was she in custody and therefore was [sic] her statements come in since she was not read Miranda.

[Reid's Counsel]: All of the statements are relevant. He's talking about her having said she drove earlier in the evening, not giving a specific time of which she was driving for him to say.

[The court]: A specific time as to when the accident took place is not relevant to this issue.

*Id.* at 20-21. The parties submitted briefs after the hearing, and the trial court issued an order on January 8, 2018, denying the motion to suppress. Reid sought the trial court's permission to seek an interlocutory appeal and this Court accepted the same.

### *Discussion*

[10] The issue is whether the trial court erred in denying Reid's motion to suppress. The admission of evidence is entrusted to the trial court's sound discretion. *Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014). ''We review a trial court's denial of a defendant's motion to suppress deferentially, construing conflicting evidence in the light most favorable to the ruling, but we will also consider any substantial and uncontested evidence favorable to the defendant.'' *Id.* "We

defer to the trial court's findings of fact unless they are clearly erroneous, and we will not reweigh the evidence." *Id.* "When the trial court's denial of a defendant's motion to suppress concerns the constitutionality of a search or seizure, however, it presents a question of law, and we address that question de novo." *Id.* We may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason the trial court enunciated. *Randall v. State*, 101 N.E.3d 831, 836 (Ind. Ct. App. 2018) (citing *Scott v. State*, 883 N.E.2d 147, 152 (Ind. Ct. App. 2008)), *trans. denied*.

[11] Reid argues that Officer Paris detained her and conducted a custodial interrogation of her at her residence without first advising her of her *Miranda* rights in violation of the Fourth and Fifth Amendments of the United States Constitution and Article 1, Section 11 of the Indiana Constitution.[6]

A. *Fourth Amendment*

[12] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,

---

[6] Although Reid mentions Article 1, Section 14 of the Indiana Constitution in her brief, *see* Appellant's Brief at 13-15, 19, and asserts in her reply brief that she has the "same rights under Article 1, Section 14 . . . that she does under the Fifth Amendment," contending, without citation to authority, that she "is still entitled [sic] its protections even without raising a separate argument under it," Appellant's Reply Brief at 6, she does not develop any separate argument under that provision. Therefore, we analyze and resolve her claim under the Fifth Amendment. *See Myers v. State*, 839 N.E.2d 1154, 1158 (Ind. 2005) ("Where a party, though citing Indiana constitutional authority, presents no separate argument specifically treating and analyzing a claim under the Indiana Constitution distinct from its federal counterpart, we resolve the party's claim 'on the basis of federal constitutional doctrine and express no opinion as to what, if any, differences there may be' under the Indiana Constitution." (quoting *Williams v. State*, 690 N.E.2d 162, 167 (Ind. 1997))).

shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Encounters between law enforcement officers and public citizens take a variety of forms, some of which do not implicate the protections of the Fourth Amendment and some of which do. *Clark v. State*, 994 N.E.2d 252, 261 (Ind. 2013) (citing *Finger v. State*, 799 N.E.2d 528, 532 (Ind. 2003)). Consensual encounters in which a citizen voluntarily interacts with an officer do not compel Fourth Amendment analysis. *Id.* Nonconsensual encounters do, though, and typically are viewed in two levels of detention: a full arrest lasting longer than a short period of time, or a brief investigative stop. *Id.*

[13] An arrest or detention that lasts for more than a short period of time must be justified by probable cause. *Powell v. State*, 912 N.E.2d 853, 859 (Ind. Ct. App. 2009) (citing *State v. Calmes*, 894 N.E.2d 199, 202 (Ind. Ct. App. 2008)). Pursuant to Fourth Amendment jurisprudence under *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 1883 (1968), the police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based upon specific and articulable facts, the officer has a reasonable suspicion of criminal activity. *Rutledge v. State*, 28 N.E.3d 281, 290 (Ind. Ct. App. 2015). *See also Jackson v. State*, 669 N.E.2d 744, 747 (Ind. Ct. App. 1996) ("In *Terry*, the Supreme Court held that 'where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal

activity may be afoot' the officer may briefly stop the suspicious person and make 'reasonable inquiries' to confirm or dispel those suspicions.") (quoting *Terry*, 392 U.S. at 30, 88 S. Ct. at 1884). Reasonable suspicion exists if the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Powell v. State*, 841 N.E.2d 1165, 1167 (Ind. Ct. App. 2006). In judging the reasonableness of investigatory stops under *Terry*, courts must strike "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law [enforcement] officers." *Carter v. State*, 692 N.E.2d 464, 466 (Ind. Ct. App. 1997) (quoting *Brown v. Texas*, 443 U.S. 47, 50, 99 S. Ct. 2637, 2640 (1979)). When balancing these competing interests in different factual contexts, a central concern is "that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Id.* (citing *Brown*, 443 U.S. at 51, 99 S. Ct. at 2640). "No unreasonable search occurs when police enter areas of curtilage impliedly open to use by the public to conduct legitimate business." *Hardister v. State*, 849 N.E.2d 563, 570 (Ind. 2006). Legitimate business includes a "knock and talk" where police use normal routes of ingress and egress from a residence to make appropriate inquiries of the occupants. *Id.*

[14] In order to pass constitutional muster, reasonable suspicion must be comprised of more than an officer's general "hunches" or unparticularized suspicions. *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883. The United States Supreme Court has

directed reviewing courts to "make reasonable-suspicion determinations by look[ing] at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *State v. Burlington*, 802 N.E.2d 435, 438 (Ind. 2004) (quoting *United States v. Arvizu*, 534 U.S. 266, 273-274, 122 S. Ct. 744, 750-751 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S. Ct. 690 (1981))).

[15] Reid argues that she was detained without reasonable suspicion supported by articulable facts that criminal activity could be afoot. She contends that her statements did not clearly establish the time when she had been the driver of the vehicle, but rather that she had driven at some point during the day, and that Officer Paris responded to a call that "*may* have indicated a criminal act (possible impaired driver), but also may have only been a traffic accident or a disturbance." Appellant's Brief at 17. She further argues that she was not free to leave her encounter with Officer Paris and no reasonable person would have believed she was permitted to leave. She asserts that Officer Paris "immediately began interrogating [her] upon his arrival"; gave her "specific directives, including where to stand and to put out her cigarette"; "right away asked her what she had hit with her vehicle"; and "isolated her from a friend at the scene." *Id*. at 7. She contends he subjected her to "coercive and accusatory questioning" when he "accused her of striking something with her vehicle," "accused her of lying to him when she responded that the damage he was referring to was not new," "continued to argue . . . and insist that the damage

had occurred," and "admonished her for not being more forthcoming and for impeding his investigation." *Id*.

[16] The State responds by arguing that Officer Paris's interaction with Reid began as a consensual encounter and evolved into an investigative stop under *Terry* when he recognized her intoxication and observed fresh damage to the vehicle in her driveway. It argues Officer Paris had "accumulating observations" that provided reasonable suspicion regardless of when the interaction changed from a consensual encounter into an investigative stop. Appellee's Brief at 12. It contends articulable facts, which "provided ample reasonable suspicion that [Reid] may have driven the vehicle while intoxicated and had struck something," support an investigation under *Terry*. *Id.* at 14.

[17] The record reveals that Officer Paris responded to a call by Reid's husband, who had heard "a loud noise outside" his residence, looked outside to see Reid "staggering in the driveway," and believed she had "struck something with her vehicle." Transcript at 5-6. It also reveals that upon his arrival Officer Paris observed a vehicle with damage to the rear passenger-side bumper and the front passenger-side tire and that Reid answered affirmatively when asked "did you just get home." State's Exhibit 1 at 0:25-0:31. He "[i]mmediately noticed that [Reid] was intoxicated" and that she was "unsteady on her feet," had "blood shot [sic] eyes," and had a "strong odor of alcoholic beverage about her person" which "became stronger as she spoke." Transcript at 6-7. We also note that Officer Paris did not believe Reid's answers about the damage, given it "appeared to be extremely fresh." *Id.* at 8. *See Finger*, 799 N.E.2d at 534

("Deceptive responses may contribute to reasonable suspicion of criminal activity."). Under these circumstances, we conclude that the facts known to Officer Paris together with the reasonable inferences arising from such facts would cause an ordinarily prudent person to believe that criminal activity may be afoot. Accordingly, Reid's Fourth Amendment rights were not violated.

B. *Fifth Amendment*

[18] In *Miranda v. Arizona*, the United States Supreme Court held that the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). Prior to any custodial interrogation, "the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* Statements elicited in violation of *Miranda* generally are inadmissible in a criminal trial. *Loving v. State*, 647 N.E.2d 1123, 1125 (Ind. 1995). Further, "'[b]ecause the 5th [A]mendment right against self-incrimination does not apply to the obtaining of noncommunicative physical evidence,' such rights cannot be violated when the State acquires a chemical breath test from a suspect without first giving that suspect the assistance of counsel." *Cohee v. State*, 945 N.E.2d 748, 752 (Ind. Ct. App. 2011) (quoting *Davis v. State*, 367 N.E.2d 1163, 1166-1167 (Ind. Ct. App. 1977)), *trans. denied*. *See also State v. McCaa*, 963 N.E.2d 24, 30 (Ind. Ct. App. 2012) ("In . . . a case

[where] the officer [has a reasonable suspicion that criminal activity may be afoot, he] may briefly detain [a suspect] to conduct a limited 'non-invasive' search such as a 'pat down' for weapons, a license and registration check, *or field sobriety tests*.") (emphasis added) (quoting *Snyder v. State*, 538 N.E.2d 961, 963 (Ind. Ct. App. 1989), *trans. denied*), *trans. denied*.

[19] The trigger to require *Miranda* rights advisement is custodial interrogation. *State v. Brown*, 70 N.E.3d 331, 335 (Ind. 2017) (citing *White v. State*, 772 N.E.2d 408, 412 (Ind. 2002)). Questioning an individual the police suspect of a crime does not inherently render the questioning custodial interrogation. *See Luna v. State*, 788 N.E.2d 832, 834 (Ind. 2003) ("Nor is the requirement of warnings to be imposed simply because . . . the questioned person is one whom the police suspect." (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711 (1977)). Courts look to the "totality of the circumstances" to determine whether a person was in custody. *Brown*, 70 N.E.3d at 335 (quoting *Wright v. State*, 766 N.E.2d 1223, 1229 (Ind. Ct. App. 2002)). *See also Hicks v. State*, 5 N.E.3d 424, 429 (Ind. Ct. App. 2014) ("We examine all the circumstances surrounding an interrogation, and are concerned with objective circumstances, not upon the subjective views of the interrogating officers or the suspect."), *trans. denied*. The Seventh Circuit has compiled the following helpful list of factors identified by courts to "be significant in determining whether a person is in custody": whether and to what extent the person has been made aware that he is free to refrain from answering questions; whether there has been prolonged coercive, and accusatory questioning, or whether police have employed subterfuge in

order to induce self-incrimination; the degree of police control over the environment in which the interrogation takes place, and in particular whether the suspect's freedom of movement is physically restrained or otherwise significantly curtailed; and whether the suspect could reasonably believe that he has the right to interrupt prolonged questioning by leaving the scene. *Gauvin v. State*, 878 N.E.2d 515, 521 (Ind. Ct. App. 2007) (quoting *Sprosty v. Buchler*, 79 F.3d 635, 641 (7th Cir. 1996), *cert. denied*, 519 U.S. 854, 117 S. Ct. 150 (1996)), *trans. denied*. Ultimately, the inquiry is whether there has been a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Brown*, 70 N.E.3d at 335 (quoting *Stansbury v. California*, 511 U.S. 318, 322, 114 S. Ct. 1526, 1529 (1994)). *See also Luna*, 788 N.E.2d at 833 ("When determining whether a person was in custody or deprived of his freedom, the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.") (internal citations omitted) (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 3520 (1983)).

[20] Reid argues that Officer Paris conducted an interrogation of her without first advising her of her rights under the Fifth Amendment. She contends that he "then used the information he obtained from questioning [her], on her property and without an advisement of rights, to order her to submit to field sobriety tests, a portable breath test, and to obtain a warrant for a certified breath test when she refused to consent to one." Appellant's Brief at 8. She asserts in her reply brief that a "reasonable person in [her] circumstances would believe she

was not free to leave." Appellant's Reply Brief at 5-6. The State argues that Reid was not in custody throughout Officer Paris's questions while they stood in her driveway.

The evidence shows that, when Officer Paris arrived, Reid was standing outside a residence on a driveway by a vehicle with damage. Officer Paris was dispatched because Reid's husband believed she had "struck something with her vehicle." Transcript at 6. Officer Paris questioned Reid about the damage to her vehicle and did not indicate in his questions that she must remain at the scene. Based on our review of the record and the totality of the circumstances, and in light of the nature of the questioning and the relative degree of police control over the environment in which it was conducted, we cannot say that there had been a formal arrest or restraint on Reid's freedom of movement of the degree associated with a formal arrest at the time she made her statements. *See State v. Hicks*, 882 N.E.2d 238, 242 (Ind. Ct. App. 2008) (finding that a defendant, who was questioned about a vehicle stopped on railroad tracks, was not in custody for purposes of *Miranda* and noting that the police officer "in no way restrained [her] movements or used coercive tactics, and merely asked her who had been driving the vehicle"). Accordingly, we find Reid's *Miranda* rights were not violated.

C. *Article 1, Section 11*

Article 1, Section 11 of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[23] Although its text mirrors the federal Fourth Amendment, we interpret Article 1, Section 11 of our Indiana Constitution separately and independently. *Robinson*, 5 N.E.3d at 368. "When a defendant raises a Section 11 claim, the State must show the police conduct 'was reasonable under the totality of the circumstances.'" *Id.* (quoting *State v. Washington*, 898 N.E.2d 1200, 1205-1206 (Ind. 2008), *reh'g denied*). "The focus of the exclusionary rule under the Indiana Constitution is the reasonableness of police conduct." *Hardister*, 849 N.E.2d at 573. "We consider three factors when evaluating reasonableness: '1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *Robinson*, 5 N.E.3d at 368 (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)).

[24] Reid argues, in essence, that the degree of concern, suspicion, or knowledge that a violation had occurred was non-existent because, as she contends, Officer Paris had little reason to believe he was responding to a criminal act and no reason to believe that she had violated any law. She contends that the extent of law enforcement needs was negligible because "it would surely invite unreasonableness in administration" to allow law enforcement officers to "have

reasonable suspicion . . . based on every report of a person staggering in their driveway, or even intoxicated in their driveway," and to further permit officers "upon investigation of an intoxicated person at his or her residence . . . to point to any damage to that person's vehicle as 'reasonable suspicion' that the crime of operating a vehicle while intoxicated had occurred." Appellant's Brief at 17. Reid also argues that the degree of intrusion was substantial because Officer Paris "confronted" her while she was at her home and "immediately began asking her accusatory questions, accusing her of lying to him, ordering her where to stand and to put out her cigarette, and reproaching her for impeding his investigation." *Id.* at 16. The State argues that law enforcement needs were high given Reid's statements and the reasonable inferences any ordinary person would draw from the situation and contends that Officer Paris's questioning and brief investigation in the driveway were reasonable and not significantly intrusive based on the circumstances. Appellee's Brief at 19.

[25] After he proceeded to the scene without his lights or sirens activated, Officer Paris saw two women in the driveway and observed, also in the driveway, Reid's damaged vehicle. He noticed that Reid, who indicated that she just arrived at home, was intoxicated and unsteady on her feet, had bloodshot eyes, and had a strong odor of an alcoholic beverage about her person that became stronger as she spoke. The degree of concern, suspicion, or knowledge that a violation had occurred was high. We also observe that the degree of intrusion here was minimal: in responding to a call to dispatch from Reid's husband, Officer Paris approached a driveway to encounter a vehicle with damage to the

rear passenger-side bumper and a flat front passenger-side tire which had its rubber "shredded around the wheel," Transcript at 8, and to ask questions of Reid, who identified herself and answered affirmatively when asked "is this your vehicle" and "did you just get home." State's Exhibit 1 at 0:23-0:31.

[26] As for the extent of law enforcement needs, we note the Indiana Supreme Court has observed that "few Hoosiers would dispute the heartbreaking effects of drunk driving in our state" and that "law enforcement has a strong interest in preventing . . . accidents" caused by alcohol-impaired driving. *Robinson*, 5 N.E.3d at 368. Under the totality of the circumstances, we conclude that Officer Paris's conduct did not violate Reid's rights under Article 1, Section 11 of the Indiana Constitution.

## *Conclusion*

[27] For the foregoing reasons, we affirm the denial of Reid's motion to suppress.

[28] Affirmed and remanded for further proceedings.

Baker, J., and May, J., concur.