

**FILED**

Jul 11 2019, 9:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John Andrew Goodridge
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joseph C. Hudson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 11, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2628<br><br>Appeal from the Gibson Circuit<br>Court<br><br>The Honorable Jeffrey F. Meade,<br>Judge<br><br>Trial Court Cause No.<br>26C01-1605-F5-449 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Joseph C. Hudson (Hudson), appeals the trial court's denial of his motion to suppress certain evidence.

We affirm.

# ISSUES

Hudson raises two issues in this interlocutory appeal, which we restate as:

(1) Whether the trial court properly denied Hudson's motion to suppress his statements made prior to being given *Miranda* warnings; and

(2) Whether the trial court properly denied Hudson's motion to suppress the evidence discovered pursuant to a warrantless search of his vehicle.

# FACTS AND PROCEDURAL HISTORY

On April 29, 2016, Officer Jason B. Wright of the Owensville Police Department (Officer Wright) was dispatched to 205 North Scott Street in Owensville, Indiana, on a report of a domestic disturbance. Officer Wright was informed that the ex-husband, later identified as Hudson, was on the scene and possibly had a handgun. When Officer Wright arrived, he saw Hudson, Caligaro Sparacino (Sparacino), and Sparacino's son standing next to a black Dodge pick-up. Officer Wright placed Hudson in handcuffs and put him in the back of his patrol car.

After placing Hudson in the backseat of the police vehicle, Officer Wright "asked him what was going on this evening and where the gun was at."

(Transcript p. 6). Hudson responded that "he didn't know anything about a gun, and then he told [the officer] that [he] and his ex-wife got in an argument. Then the daughter stepped in." (Tr. p. 6). Returning to the other people on the scene, Officer Wright spoke with Sparacino. Sparacino informed him that Hudson wanted help loading a brake press. While Sparacino was helping Hudson, an argument broke out between Hudson and his ex-wife, "and the daughter stepped in between them. Then [Hudson] knocked the daughter down." (Tr. p. 7). Sparacino explained that he tried to break up the parties, and he was briefly successful when Hudson returned to his truck. Hudson's daughter confirmed Sparacino's version of the event and added that "her dad hit her in the face and knocked her down." (Tr. p. 27). She advised the officer that after Sparacino interfered, she saw her father return to the truck and get a gun. "She watched him walk to the front of the truck and cock the gun." (Tr. p. 27).

[6] Based on Hudson's daughter's disclosure and his own safety concerns, Officer Wright searched the truck and "found an empty holster on the driver side seat." (Tr. p. 16). Officer Wright returned to his police vehicle to speak with Hudson again. Officer Wright "still didn't locate a gun, [but] [he] knew there was a gun somewhere. [He] just didn't know where it was at." (Tr. p. 17). Officer Wright told Hudson that he had found a gun holster and gave him *Miranda* warnings. He then asked Hudson "why he got the handgun out. And [Hudson] told [him] that it was for his protection." (Tr. p. 10). The officer later located the handgun in Hudson's truck.

On May 6, 2016, the State filed an Information, charging Hudson with Count I, intimidation with a deadly weapon, a Level 5 felony, Ind. Code § 35-45-2-1(a)(2), (b)(2)(A); and Count II, battery, a Class B misdemeanor, I.C. § 35-42-2-1(b)(1). On July 18, 2016, Hudson filed a motion to suppress evidence. On October 31 and November 28, 2016, the trial court conducted a hearing on Hudson's motion, and subsequently denied his motion on September 14, 2018. On October 1, 2018, Hudson filed a motion to certify the trial court's decision for interlocutory appeal, which was granted by the trial court two days later. On October 31, 2018, the court of appeals accepted jurisdiction over the interlocutory appeal.

Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

Hudson contends that the trial court abused its discretion by denying his motion to suppress. Where a party appeals from the trial court's grant or denial of a motion to suppress, it appeals from a negative judgment and must show that the ruling on the motion was contrary to law. *State v. Keller*, 845 N.E.2d 154, 161 (Ind. Ct. App. 2006). We reverse only where the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that reached by the trial court. *Id*. We treat the review of a motion to suppress in a fashion similar to instances in which the sufficiency of the evidence is challenged. *Id*. To this end, we will not reweigh the evidence or judge witness credibility, and consider the evidence most favorable to the trial court's ruling. *Id*. In doing so,

"we must review the totality of the circumstances, thereby requiring this court to review all the facts and circumstances that are particular to the case." *Id*. However, the review of a denial of a motion to suppress is different from other sufficiency matters in that we must also consider uncontested evidence that is favorable to the defendant. *Jones v. State*, 54 N.E.3d 1033, 1036 (Ind. Ct. Ap. 2016), *trans. denied*. We will disturb the trial court's ruling on a motion to suppress only upon a showing of abuse of discretion. *Id*.

## I. *Miranda Warnings*

[10] Focusing on the officer's initial encounter with Hudson and the officer's questioning to ascertain the seriousness of the situation, Hudson contends that Officer Wright should have provided him with *Miranda* warnings at the moment he was being handcuffed and submitted to a custodial interrogation.

[11] In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Prior to any custodial interrogation, "the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id*. Statements elicited in violation of *Miranda* generally are inadmissible in a criminal trial. *Loving v. State*, 647 N.E.2d 1123, 1125 (Ind.

1995).  The trigger to require a *Miranda* rights advisement is custodial interrogation.  *State v. Brown*, 70 N.E.3d 331, 335 (Ind. 2017).  Questioning an individual the police suspect of a crime does not inherently render the questioning custodial interrogation.  *Reid v. State*, 113 N.E.3d 290, 300 (Ind. Ct. App. 2018), *trans. denied*.  Courts look to the "totality of the circumstances" to determine whether a person was in custody.  *Brown*, 70 N.E.3d at 335; *see also Hicks v. State*, 5 N.E.3d 424, 429 (Ind. Ct. App. 2014) ("We examine all the circumstances surrounding an interrogation and are concerned with objective circumstances, not with the subjective views of the interrogating officers or the suspect."), *trans. denied*.  Although courts have compiled a non-exhaustive list of factors which may be taken into account to determine whether a person is in custody, ultimately, the inquiry is whether there has been a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."  *Brown*, 70 N.E.3d at 335.

[12]     When Officer Wright arrived on the scene, he was faced with a report of domestic disturbance, three individuals, and the allegation that a gun was possibly involved.  In an attempt to decrease the tension and to provide a safe environment for everyone, Officer Wright separated the parties by placing Hudson in handcuffs and in the back of his patrol vehicle.  Trying to confirm the presence or location of a possible weapon, Officer Wright asked Hudson "what was going on this evening and where the gun was at." (Tr. p. 6).  After denying any knowledge about a gun, Hudson advised the officer that he and his ex-wife had gotten in an argument.

[13] We have previously held that the use of handcuffs would cause a reasonable person to feel that one was not free to leave and that one's freedom of movement was retrained to the degree associated with a formal arrest. *Wright v. State*, 766 N.E.2d 1223, 1230 (Ind. Ct. App. 2002); *see also Loving*, 647 N.E.2d at 1125-26. Accordingly, we find that Hudson was in custody when handcuffed for officer safety and placed in the back of the patrol vehicle.

[14] Next, we must determine whether Officer Wright's inquiry amounted to police interrogation. For purposes of *Miranda*, police interrogation includes both express questioning and words or actions that, given the officer's knowledge, the officer should know are reasonably likely to elicit an incriminating response from the suspect. *Wright*, 766 N.E.2d at 1230. The interrogation must involve a measure of compulsion beyond that inherent in custody itself. *Id*. Not every question an officer asks amounts to interrogation for purposes of *Miranda*. *Wissman v. State*, 540 N.E.2d 1209, 1212 (Ind. 1989).

[15] Based on the totality of the circumstances, we conclude that Officer Wright's initial question to Hudson amounted to an inquiry into the facts of the situation, which did not require a *Miranda* advisement. When the officer arrived at the scene, he was aware that a gun might possibly be involved; however, unaware of its presence or its ownership, the officer commenced his investigation by separating the parties. Trying to ascertain whether his information was correct, the officer inquired as to "where the gun was[.]" (Tr. p. 6). Without more definite information about the presence, location, or ownership of the weapon, Officer Wright conducted "[g]eneral on-the-scene

questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process," which does not fall within the purview of *Miranda* requirements. *Miranda*, 384 U.S. at 477-78; *Hatcher v. State*, 410 N.E.2d 1187, 1189 (Ind. 1980); *Orr v. State*, 472 N.E.2d 627, 636 (Ind. Ct. App. 1984), *trans. denied*. It was only after Officer Wright spoke with Hudson's daughter who confirmed the actual presence of a gun, and the discovery of a holster in Hudson's truck, that *Miranda* warnings were implicated prior to questioning Hudson a second time. Officer Wright's testimony reveals that upon returning to his patrol vehicle and questioning Hudson a second time to find the location of Hudson's gun, Officer Wright *Mirandized* Hudson. Accordingly, we affirm the denial of the trial court's motion to suppress with respect to Hudson's statements.

## II. *Warrantless Search of Vehicle*

[16] Next, Hudson contends that the search of his truck was conducted in violation of the Fourth Amendment to the United States Constitution.[1] The Fourth Amendment to the United States Constitution provides, in pertinent part: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" As a general rule, the Fourth Amendment prohibits warrantless searches.

---

[1] Hudson did not present an argument as to the reasonableness of the search under the Indiana Constitution. His appellate brief contains no reference to the Indiana Constitution, much less the "separate legal analysis" that is required to argue the legality of the search under our State constitution. *See State v. Friedel*, 714 N.E.2d 1231, 1243 (Ind. Ct. App. 1999).

*Masterson v. State*, 843 N.E.2d 1001, 1004 (Ind. Ct. App. 2006), *trans. denied*. When a search is conducted without a warrant, the State has the burden of proving that the search falls into one of the exceptions to the warrant requirement. *Meister v. State*, 933 N.E.2d 875, 878 (Ind. 2010). The automobile exception is a well-recognized exception to the warrant requirement. *Id*. A search falls within this exception when the vehicle is readily mobile and probable cause exists to believe it contains contraband or evidence of a crime. *Id.* Where there is probable cause to search a vehicle, a search is not unreasonable if it is based on facts that would justify the issuance of a warrant, even though a warrant has not been obtained. *Id.* The United States Supreme Court has stated that when there is probable cause that a vehicle contains evidence of a crime, a warrantless search of the vehicle does not violate the Fourth Amendment because of the existence of exigent circumstances arising out of the likely disappearance of the vehicle. *California v. Acevedo*, 500 U.S. 565, 569, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). Moreover, [i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 939, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996).

In *Myers v. State*, 839 N.E.2d 1146, 1152 (Ind. 2005), our supreme court concluded:

> In light of the Supreme Court's recent emphatic statement in *Dyson* that the automobile exception 'does not have a separate

exigency requirement,' 527 U.S. at 467 [119 S.Ct. 2013], we conclude that this exception to the warrant requirement under the Fourth Amendment does not require any additional consideration of the likelihood, under the circumstances, of a vehicle being driven away. Rather, we understand the 'ready mobility' requirement of the automobile exception to mean that all operational, or potentially operational, motor vehicles are inherently mobile, and thus a vehicle that is temporarily in police control or otherwise confined is generally considered to be readily mobile and subject to the automobile exception to the warrant requirement if probable cause is present.

"Facts necessary to demonstrate the existence of probable cause for a warrantless search are not materially different from those which would authorize the issuance of a warrant if presented to a magistrate." *Gibson v. State*, 733 N.E.2d 945, 952 (Ind. Ct. App. 2000). "Probable cause to issue a search warrant exists where the facts and circumstances would lead a reasonably prudent person to conclude that a search of those premises will uncover evidence of a crime." *Id.*

[18]     We conclude that Officer Wright had probable cause to conduct a warrantless search of Hudson's truck. After speaking with Hudson's daughter, Officer Wright received confirmation of the report that a weapon was involved as well as its ownership. Officer Wright also learned from Hudson's daughter that Hudson had reached into his vehicle to get a gun as "[s]he watched him walk to the front of the truck and cock the gun." (Tr. p. 27). Based on these statements, Officer Wright could reasonably conclude that Hudson had committed intimidation and that a search of the readily mobile truck would

uncover evidence of a handgun. Therefore, the warrantless search of the vehicle was permissible and the trial court properly denied Hudson's motion to suppress.

# CONCLUSION

[19] Based on the foregoing, we hold that the trial court properly denied Hudson's motion to suppress certain statements and the evidence discovered during a warrantless search of his vehicle.

[20] Affirmed.

[21] Bailey, J. and Pyle, J. concur