In the
# United States Court of Appeals
## For the Seventh Circuit

No. 11-2016

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JASON SMITH,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 10 CR 107—**Robert L. Miller, Jr.**, *Judge*.

ARGUED SEPTEMBER 30, 2011—DECIDED JANUARY 3, 2012

Before EASTERBROOK, *Chief Judge*, and POSNER and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. On July 14, 2010, an officer with the South Bend Police Department stopped the vehicle that Jason Smith was driving when Smith failed to signal a right turn at an intersection. A search of Smith's car yielded a loaded revolver, crack cocaine, marijuana, and a digital scale, and he was charged with being a felon in possession of a firearm, possession of crack cocaine with intent to deliver, and possession of a

firearm in furtherance of a drug transaction, with the indictment stating that the events took place "on or about July 13, 2010." Smith moved to suppress the items recovered on the ground that the officer lacked probable cause for the stop because a turn signal was not required, which the district court denied. During his trial, the government proved that the traffic stop actually took place on July 14, 2010, and at the close of evidence, Smith moved for acquittal on the ground that the indictment was constructively amended based on the discrepancy in dates, which the court also denied. The jury found Smith guilty on all counts, and Smith appeals the district court's denial of his motion to suppress and his motion for acquittal, arguing first that he did not commit a traffic violation by failing to signal because he was only bearing right. We disagree and find that under Indiana law, Smith turned right requiring a signal. Smith also argues that the government constructively amended the indictment by stating that the traffic stop occurred "on or about July 13, 2010" in the indictment, but proving a different date at trial. We find no constructive amendment, and affirm the judgment.

## I.  BACKGROUND

On the morning of July 14, 2010 Officer Greg Early of the South Bend Police Department was on a routine patrol in the city of South Bend. Officer Early was driving a marked police car with a police dog trained in narcotics detection when he saw a Pontiac Grand Prix at a service

station near the intersection of Elwood and Portage. A few days earlier, Officer Early received a tip from an informant that a black male in his twenties was driving a Pontiac Grand Prix while carrying a gun and drugs. The license plate number of the Grand Prix in Officer Early's view matched the one provided by the informant. Officer Early proceeded to another call, but spotted the Pontiac between fifteen and twenty minutes later. Officer Early later testified that he noticed a "questionable," but "pretty dark" tint on the windows, and a brake light that was partially out.

Smith, the driver of the Pontiac, was driving south on Walnut Street and reached the intersection of Fassnacht, Walnut, and LaPorte Streets. Fassnacht, Walnut, and LaPorte Streets form a three-way, five pronged intersection. (A map from the record is appended to the end of this opinion). Not all three streets intersect at the same point, and if one were driving southbound on Walnut, the driver could take a sharp turn right onto LaPorte, a less severe (approximately 120 degree) turn right onto Fassnacht, or a slight left turn to continue onto Walnut.

Smith did not use his signal light when he turned from Walnut onto Fassnacht Street. At that point Officer Early activated his lights and siren and called for backup. Smith pulled over on Fassnacht Street, and Officer Early approached the car. Because he had trouble seeing through the window tint, Officer Early asked Smith to show his hands through the driver's side window, and then asked for his license and registration. Officer Early smelled the

odor of burnt marijuana, and found Smith to appear nervous as he "fumbled around for the registration." Smith handed Officer Early the registration, but could not produce a license. Officer Early then saw Smith push closed the front of a plastic grocery bag on the passenger's seat. After backup arrived, Officer Early ordered Smith out of the car and patted him down, recovering what he suspected were ecstasy but were later deemed caffeine pills. He placed Smith in handcuffs and asked Smith if there was anything else in his vehicle. Smith replied that there was a gun in the car, and Officer Early looked into the driver's side door and saw a gun on the floor of the car. Officer Early removed the gun from the car and had his canine perform a search of the vehicle. The dog alerted to the plastic bag on the passenger's seat of the vehicle. Officer Early searched the bag and found that it contained marijuana, crack cocaine, and a digital scale.

Smith was charged with being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), possessing crack cocaine with intent to deliver, 21 U.S.C. § 841(a)(1), and possessing a firearm in furtherance of a drug transaction, 18 U.S.C. § 924(c).[1] Smith filed a motion to suppress the items recovered during the search of his vehicle under the Fourth Amendment, arguing that the stop was unlawful because there was no need to signal when "bearing right"

---

[1] Smith was also charged with possession of ecstasy with intent to distribute, 21 U.S.C. § 841. The government later dismissed this count when the substance was found to be caffeine pills and not ecstasy.

from Walnut onto Fassnacht Street. After reviewing a map and video footage of the intersection and stop from the police vehicle, the district court found that the traffic stop was not a violation of the Fourth Amendment because it was "enough of a turn that Indiana law requires a signal." A jury trial commenced.

While the indictment stated that the events in connection with Smith's arrest occurred on July 13, 2010, the government revealed at trial that the events actually occurred on July 14, 2010. At the close of evidence, Smith argued that his indictment was constructively amended and moved for acquittal, which the court denied. Smith was convicted on all three counts, and was sentenced to a term of 165 months' imprisonment. Smith now appeals the denial of his motion to suppress and his motion for acquittal.

## II. ANALYSIS

When reviewing a district court's ruling on a motion to suppress, we review legal conclusions de novo and factual findings and credibility determinations for clear error. *United States v. Cartwright*, 630 F.3d 610, 613 (7th Cir. 2010). A factual finding is only deemed clearly erroneous when we have a "definite and firm conviction that a mistake has been made." *United States v. Jackson*, 300 F.3d 740, 745 (7th Cir. 2010). Special deference is given to the district court's factual determinations because the district court had the opportunity to hear the testimony and observe the demeanor of witnesses at the suppression hearing. *Id*.

A traffic stop does not violate the Fourth Amendment when the police officer has probable cause to believe that a driver has committed even a minor violation of a traffic law. *United States v. Garcia-Garcia*, 633 F.3d 608, 612 (7th Cir. 2011) (citing *Whren v. United States*, 517 U.S. 806, 819 (1996)). Other actual motivations of the police officer bear no weight on the "constitutional reasonableness" of traffic stops. *Whren*, 517 U.S. at 813. "But when a police officer mistakenly believes that the law prohibits an act that is, in fact, perfectly legal, even a good faith belief that the law has been violated will not support the stop." *Garcia-Garcia*, 633 F.3d at 612 (citing *United States v. McDonald*, 453 F.3d 958, 961-62 (7th Cir. 2006)). The officer's belief that a law has been broken must be "reasonable," but such a belief cannot be reasonable "when the acts to which the officer points as supporting probable cause are not prohibited by law." *Id.* (quoting *McDonald*, 453 F.3d at 961). The question, then, is whether Indiana law actually required a turn signal at the intersection at issue here.

Indiana Code § 9-21-8-25 provides that "[a] signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes." Though not often discussed, the Indiana Court of Appeals has highlighted that use of a turn signal is not restricted to "certain situations on certain roadways" and that the statute requires the use of a turn signal even when turning from a parking lot onto a street or changing lanes, *Datzek v. State*, 838 N.E.2d 1149, 1155 (Ind. Ct. App. 2005). But such a holding is not particularly instructive for the specific set of facts before us.

The statute does not define "turning." As such, we look to the Indiana courts for guidance. *Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 508 (7th Cir. 1998). If an Indiana statute is not ambiguous, the court will give effect to the plain, ordinary, and usual meaning of the language of the statute. *Miller v. LaSalle Bank Nat. Ass'n*, 595 F.3d 782, 786 (7th Cir. 2010); *see also Baldwin*, 137 F.3d at 508. The Oxford English Dictionary defines "turning" as "movement about an axis or centre; rotation, revolution." Oxford English Dictionary, available at http://www.oed.com/. Headed southbound on Walnut, Smith could have made two "right" choices: a roughly 120-degree right onto Fassnacht, or a less than 90 degree (and thus much more sharp) right onto LaPorte. By going right onto Fassnacht, we find that Smith sufficiently "rotated" so that his movement was a turn under a plain reading of Indiana's statute.

Smith contends that no signal was required from Walnut to Fassnacht because he did not make the sharp right turn onto LaPorte, and using a signal would have in fact confused a driver behind him. This, however, does not negate or discount the fact that Smith's turn onto Fassnacht was a right turn under Indiana law. Indiana law does not define a right turn in relation to other turns and neither the statute nor the plain or ordinary meaning defines a turn by the degree of sharpness or a particular angle. The degree of a right turn angle can vary from intersection to intersection. *See, e.g.*, *United States v. Smith*, 421 Fed. Appx. 572, 574 (6th Cir. 2011) (unpublished) ("Even if not a 90-degree turn, requiring a signal here fits within the plain language of" ordinance

stating that "[n]o person shall turn a vehicle or move right or left upon a highway . . . without giving an appropriate signal"); *see also United States v. Washington*, No. 07-CR-132, 2008 WL 90525, at *2 (N.D. Ind. Jan. 8, 2008) ("[P]roceeding straight ahead on a 'direct course' would land the driver in the business located at that intersection—and the act of making a turn requires the use of a turn signal as required by Sections 9-21-8-24 and 9-21-8-25."). The record here indicates that continuing "straight" on Walnut also includes some element of a "turn," but in a five-pronged intersection such as this, we agree with the district court that a plain reading of the statute requires a turn signal from Walnut to Fassnacht. Accordingly, Officer Early had probable cause to conduct the traffic stop. Because we find probable cause based on Smith's failure to signal, we do not reach the question of whether the vehicle's window tinting provided independent grounds for justifying the stop.

We only briefly address Smith's constructive amendment argument. We review whether a district court constructively amended the indictment de novo. *United States v. Alhalabi*, 443 F.3d 605, 614 (7th Cir. 2006). "For a change in the indictment to rise to the level of a constructive amendment, it must establish an offense different from, or in addition to, those originally charged." *United States v. Mitov*, 460 F.3d 901, 906 (7th Cir. 2006) (citing *United States v. Trennell*, 290 F.3d 881, 888 (7th Cir. 2002)). Thus, we are primarily concerned with changes made to the indictment that affect elements of the crime. *Id*. at 906-07 (citing *United States v. Krilich*, 159 F.3d 1020,

1027 (7th Cir. 1998)). Here, the date is not an element of any of the offenses charged, and "where the charge is worded so broadly as to state 'on or about' a certain date, the defendant is deemed to be on notice that the charge is not limited to a specific date." *Id*. (citing *United States v. Folks*, 236 F.3d 384, 391 (7th Cir. 2001)). The indictment gave Smith proper notice of the offense for which he was being charged and that the date of the offense listed on the indictment was an approximation. We find that proof at trial that the events took place one day after July 13, 2010 did not result in an impermissible constructive amendment. *See id.*; *Folks*, 236 F.3d at 391, *United States v. Leibowitz*, 857 F.2d 373, 379 (7th Cir. 1988).

## III. CONCLUSION

For the reasons set forth above, the judgment of the district court is AFFIRMED.

