ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

John L. Tompkins
Brown Tompkins Lorry & Mastrian
Indianapolis, Indiana



FILED

Mar 02 2017, 3:59 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

No. 49S05-1606-CR-00348

STATE OF INDIANA,

*Appellant (Plaintiff below),*

v.

DAVID BROWN,

*Appellee (Defendant below).*

Appeal from the Marion Superior Court, No. 49F07-1307-CM-043945
The Honorable Clayton A. Graham, Judge
The Honorable Steven Rubick, Magistrate

On Petition to Transfer from the Indiana Court of Appeals, No. 49A05-1506-CR-00752

**March 2, 2017**

**David, Justice.**

This case involves whether the brief detainment of defendant as part of a sobriety checkpoint is custodial so as to trigger Miranda protection. We hold that such detainment is no more custodial than a routine traffic or Terry stop, and thus, defendant was not entitled to Miranda warnings at the sobriety checkpoint.

**Facts and Procedural History**

In July 2013, the Indianapolis Metropolitan Police set up a field sobriety checkpoint to apprehend impaired drivers. Officers set up the checkpoint at the back of a well-lit Arby's parking lot and were instructed that they had no more than two (2) minutes to discern impairment before they had to release the motorists.

At some point, Defendant, David Brown, who was driving a motorcycle, entered the checkpoint. Officer Winter identified himself and asked Brown for his license. He observed that Brown had red, watery eyes, struggled to get his license out, had slurred speech and smelled like alcohol. Officer Winter asked Brown if he had been drinking and Brown admitted that he had. The officer administered some field sobriety tests, and ultimately, arrested Brown.

Brown was charged with Class C misdemeanor operating while intoxicated and Class C misdemeanor operating a vehicle with an alcohol concentration of at least .08 but less than .15 grams of alcohol per 210 liters of breath.

During a bench trial, the State presented testimony and evidence about the sobriety checkpoint, generally, and about the encounter with Brown. When one of the officers testified that Brown had admitted he had been drinking, Brown's counsel requested to ask the officer some preliminary questions. Counsel asked the officer whether the officer Mirandized Brown prior to asking him if he had been drinking, and the officer responded no. The officer further indicated that Brown was not free to go when that question was asked and that the question was asked as part of an investigation into possible impaired drivers.

Brown's counsel then objected to the officer's testimony about him asking Brown if he had been drinking and Brown's response based on a <u>Miranda</u> violation. The State argued in response that a <u>Miranda</u> warning was not necessary because the checkpoint was a traffic stop and not a custodial situation.

The trial court instructed the parties to brief this issue and agreed to bifurcate the trial. After reviewing the parties' briefs, the trial court entered an order granting Brown's motion to

2

suppress. The court's order suppressed "any statements by [Brown], as well as any evidence obtained thereafter." (App. 66.)

Thereafter, the State filed a motion to correct error, arguing no Miranda violation occurred, and even if it did, the other evidence (e.g., field sobriety test and Breathalyzer results) should not have been excluded. The trial court denied that motion, and the State appealed.

In an unpublished decision, the Court of Appeals, *sua sponte*, determined that the State had no statutory authority to appeal because Brown never filed a written motion to suppress, the State's brief did not explicitly address its statutory authority to appeal, the order suppressing the evidence was issued during trial (and thus, after jeopardy attached) and that due to the "unusual and uncertain" procedural posture, the State could not bring the appeal. State v. Brown, 2016 WL 1276576 at **7, 10-12 (Ind. Ct. App. 2016). It therefore dismissed the State's appeal and remanded it to the trial court for further proceedings. The State then petitioned for transfer, which we granted. Ind. App. Rule 58(A).

As a threshold matter, we hold that the State can bring its appeal pursuant to Indiana Code § 35-38-4-2(5). We further hold, as a matter of first impression, that Miranda warnings are not required in circumstances such as these, where a defendant is briefly detained at a public sobriety checkpoint.

**Discussion and Decision**

I.      **The State may appeal from the trial court's order granting Brown's motion to suppress.**

As a threshold matter, we first address the State's right to appeal this matter. The State's statutory right to appeal the order is an issue of law which this Court reviews *de novo*. State v. I.T., 4 N.E.3d 1139, 1142 (Ind. 2014). Indiana Code section 35-38-4-2 governs, and at the time of the State's appeal, it provided in relevant part:

> Appeals to the supreme court or to the court of appeals, if the court rules so provide, may be taken by the state in the following cases:

*＊＊*

> *(5) From an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution.[1]*

Ind. Code § 35-38-4-2 (Supp. 2012) (emphasis added).

When interpreting a statute, our primary goal is to fulfill the legislature's intent. <u>Day v. State</u>, 57 N.E.3d 809, 812 (Ind. 2016) (citation omitted). The "best evidence" of that intent is the statute's language. <u>Id.</u> If that language is clear and unambiguous, we simply apply its plain and ordinary meaning, heeding both what it "does say" and what it "does not say." <u>State v. Dugan</u>, 793 N.E.2d 1034, 1036 (Ind. 2003).

Here, pursuant to the plain language of the statute, the State has the authority to appeal under subsection (5) because both requirements of that subsection are met. That is: 1) the trial court granted Brown's motion to suppress; and 2) the suppression order was so broad that it effectively precluded further prosecution.

The Court of Appeals held that because Defendant did not file a motion to suppress and, instead, merely objected to evidence introduced at trial, the trial court never granted a motion to suppress. However, even though Brown initially raised the <u>Miranda</u> violation through an oral objection, he eventually filed a "Memorandum of Law in Support of *Motion to Suppress*." (App. at 58 (emphasis added).) Also, while Brown technically did not "file" a motion to suppress, a filing requirement appears nowhere in the plain language of subsection (5). Finally, the trial court's own order treated Brown's objection as a "Motion to Suppress" and granted it. (App. at 66.) Accordingly, we find that the trial court did, in fact, grant a motion to suppress.

Additionally, while the Court of Appeals correctly noted that the matter is stayed, that a verdict or judgment has not been rendered and that the chronological case summary reveals that the charges remain and the parties continue to have status conferences, nevertheless, the trial court's granting of

---

[1] Subsection (5) was subsequently amended, effective July 1, 2015. However, the State filed its Notice of Appeal on June 30, 2015 and thus, the statute in effect at that time applies.

Brown's motion to suppress effectively precludes further prosecution. Indeed, the suppression order here was quite broad as it suppressed "any statements by [Brown] as well as any evidence obtained thereafter." (App. 66.) Brown was charged with two counts: 1) operating a vehicle with a BAC between .08 and .15; and 2) operating while intoxication. The suppression order effectively excludes all the evidence the State would need to prove these charges, including all Brown's statements to police, physical evidence that Brown was intoxicated and the alcohol concentration in Brown's body. Without this evidence, the State has no case. Thus, we find that the suppression order precludes further prosecution notwithstanding the fact that the matter remains pending on the trial docket.

## II. The sobriety checkpoint at issue does not trigger Miranda.

Now that we have determined that the State may bring its appeal, we turn to the merits of this matter. That is, whether the trial court properly granted Brown's motion to suppress because Brown was not given Miranda warnings prior to police asking him if he was drinking at the sobriety checkpoint.

When the State appeals from a negative judgment, it bears the burden to "show that the trial court's ruling on the suppression motion was contrary to law." State v. Keck, 4 N.E.3d 1180, 1183 (Ind. 2014) (quoting State v. Washington, 898 N.E.2d 1200, 1203 (Ind. 2008)). We evaluate the trial court's findings of fact deferentially, neither reweighing the evidence nor reassessing the credibility of the witnesses. Id. We will affirm if we find within the record "substantial evidence of probative value" to support the judgment. State v. Quirk, 842 N.E.2d 334, 340 (Ind. 2006). But we review the trial court's conclusions of law, including whether a sobriety checkpoint triggers Miranda, *de novo*. Sellmer v. State, 842 N.E.2d 358, 361 (Ind. 2006).

Brown argues that the officer on duty at the checkpoint was required to give him Miranda warnings prior to asking him incriminating questions, and that because the officer failed to do so, the State's evidence is inadmissible on the grounds that it was unconstitutionally obtained. The State maintains that a sobriety checkpoint does not require an officer to give Miranda warnings.

The United States Supreme Court held in Miranda v. Arizona, 384 U.S. 436, 444 (1966), "that a person questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first 'be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'" Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444). The trigger to require the announcement of Miranda rights is custodial interrogation. White v. State, 772 N.E.2d 408, 412 (Ind. 2002).

"Interrogation" for purposes of Miranda constitutes questions, words, or actions that the officer knows or should know are reasonably likely to elicit an incriminating response. White, 772 N.E.2d at 412. Here, the State concedes that when the officer asked Brown if he had been drinking, the officer knew it was likely to elicit an incriminating response. Nevertheless, the State argues that the police questioning in this case was not custodial. Thus, this case turns on whether Brown was in custody at the time of the questioning.

Courts look to the "totality of the circumstances" to determine whether a person was in custody. Wright v. State, 766 N.E.2d 1223, 1229 (Ind. Ct. App. 2002). The inquiry is whether there has been a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Stansbury, 511 U.S. at 322 (internal quotation and citation omitted).

The State argues that the checkpoint was akin to a Terry investigatory stop or traffic stop, and as such, Brown was not in custody when asked the incriminating question by police. Brown responds that unlike a Terry or traffic stop, with a checkpoint stop, police do not even have reasonable suspicion that a person has engaged in any criminal activity. Brown also relies on Fourth Amendment jurisprudence that a person's liberty is significantly limited when they are stopped at a checkpoint and argues that a reasonable motorist would not feel free to terminate the encounter and drive away. He points to the presence of "chase cars" positioned to pursue those at the checkpoints who tried to flee.

However, to the extent that Brown is arguing that a seizure under the Fourth Amendment is akin to custody under the Fifth Amendment, the U.S. Supreme Court has made clear that this is not the case. The test of whether a defendant is in custody is not whether a defendant feels free to go, but rather whether there was a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest." Stansbury at 322. Further, the United States Supreme Court has repeatedly held that a person temporarily detained in an ordinary traffic stop is not in custody for the purposes of Miranda. Pennsylvania v. Bruder, 488 U.S. 9, 10 (1988); (citing Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984)). In Berkemer, the U.S. Supreme Court made clear that a traffic stop "significantly curtails the 'freedom of action' of the driver" and that "[c]ertainly few motorists would feel free to disobey a direction to pull over or leave the scene of a traffic stop without being told they might do so." Berkemer, 468 U.S. at 436-37. Thus, it concluded that a traffic stop is a "seizure" within the meaning of the Fourth Amendment. Nevertheless, the Court declined to find that this seizure was custody for Miranda purposes. Id. at 437. Our Court has similarly held that a suspect who was stopped and "seized" for purposes of the Fourth Amendment is not ordinarily in custody. Meredith v. State, 906 N.E.2d 867, 873-74 (Ind. 2009).

While Indiana has not previously addressed the issue of whether a checkpoint interrogation, in particular, constitutes a custodial situation so as to implicate Miranda, at least a couple of other states have and they have determined that Miranda warnings were not required for similar checkpoints. For instance, the Georgia Supreme Court held that a police officer's questioning of defendant at a safety checkpoint did not constitute a custodial situation implicating Miranda. Phillips v. State, 697 S.E.2d 818, 821-22 (Ga. 2010) ("roadside questioning at a routine stop does not constitute such a custodial situation"). Similarly, the Superior Court of Pennsylvania[2] found that no Miranda warnings were required before defendant was requested to perform a field sobriety test after he was stopped at a drunk-driver roadblock. Com. v. Stewart, 846 A.2d 738, 742 (Pa. Ct. 2004). We find these decisions of other appellate courts to be instructive and in line with Fifth Amendment jurisprudence.

_____

[2] The Superior Court of Pennsylvania is one of two state intermediate appellate courts.

We also find that there is no meaningful distinction between traffic stops or Terry stops and the checkpoint stop in this case. In Berkemer, the U.S. Supreme Court noted two reasons why a traffic stop (or a Terry stop) does not trigger Miranda. First, it noted the temporary and brief nature of the stop: "questioning incident to an ordinary traffic stop is quite different from stationhouse interrogation, which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek." Berkemer at 438. Second, it noted the public nature of the stop: "[t]he atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in Miranda. . ." Id. at 439.

Both of these reasons apply equally to the checkpoint stop in this case. Here, the record reflects that officers had only two minutes to discern impairment during stops. Thus, the stop was temporary and brief. Also, the checkpoint at issue here took place in a well-lit Arby's parking lot and thus, was at least as public as a routine traffic stop. This is not to say that there cannot be a set of circumstances where a detention as part of a sobriety checkpoint is so lengthy and/or private that it triggers Miranda. However, looking at the circumstances in this case, including the short duration of the stop and the public nature of it, we cannot say that Brown was in custody for Miranda purposes. We find this safety checkpoint questioning was no more custodial than a routine traffic stop or a Terry stop.

**Conclusion**

We hold that the State could properly bring its appeal in this case because the trial court granted a motion to suppress and the suppression order was so broad that it effectively precluded further prosecution. We further hold that under the facts and circumstances of this case, where the sobriety checkpoint at issue was: 1) brief and temporary in duration; and 2) public, Miranda warnings were not required because Brown was not in custody. Accordingly, we reverse the trial court's suppression order and remand for further proceedings.

Rush, C. J., Massa and Slaughter, J.J., concur.
Rucker, J., concurs in result with separate opinion.

**RUCKER, J. concurring in result.**

Because I believe a motorist detained at a sobriety checkpoint is entitled to the protection afforded by Miranda v. Arizona, 384 U.S. 436 (1966), I disagree with that portion of the majority opinion declaring otherwise. However, I acknowledge the United States Supreme Court has declined to expand Miranda's reach to cases involving routine traffic stops and its reasoning is applicable to the case before us. Therefore, I am compelled to concur in result.

Miranda teaches that a person questioned "by law enforcement officers after [being] *taken into custody or otherwise deprived of his freedom of action in any significant way"* must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id. at 444 (emphasis added).

It is the custodial aspect of law enforcement conduct that has attracted the attention of most courts and commentators. Even this Court has held, "[r]ights under Miranda apply *only* to custodial interrogation." Albrecht v. State, 737 N.E.2d 719, 727 (Ind. 2000) (emphasis added). And in the case before us the majority's attention is also drawn to the question of custody. See Slip op. at 6 ("[T]his case turns on whether Brown was in custody at the time of the questioning.").

But resolving the issue of custody does not end the inquiry. Little to no attention has focused on another important aspect of conduct triggering Miranda protections, namely a person questioned by law enforcement officers—regardless of custody—who has been "otherwise *deprived of his freedom of action in any significant way*." Miranda, 384 U.S. at 444 (emphasis added). And on this point the United States Supreme Court has had this to say:

> [A] traffic stop significantly curtails the "freedom of action" of the driver and the passengers, if any, of the detained vehicle. . . . [W]e have long acknowledged that stopping an automobile and detaining its occupants constitute a "seizure" within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief.

Berkemer v. McCarty, 468 U.S. 420, 436-37 (1984) (brackets and quotation omitted). This declaration seems clear enough: Miranda protections extend to questioning by law enforcement that deprives a person of his freedom of action in any significant way, and traffic stops do exactly that. Stated somewhat differently, police questioning after stopping a vehicle even for a brief detention falls squarely within the dictates of the language in Miranda.

Nonetheless, parsing the underlying rationale for the decision itself and noting the potential problems confronting law enforcement officers should warnings be required for traffic stops, the Court declined to extend the scope of Miranda under such circumstances, noting "the atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in Miranda itself[.]" Berkemer, 468 U.S. at 438-39 (citation omitted). On questions of federal law this Court is bound by the decisions of the United States Supreme Court. And although Berkemer involved a routine traffic stop and the case before us concerns a sobriety checkpoint, the underlying rationale of Berkemer controls the outcome here. Because the majority opinion is consistent with Berkemer, I concur in result.