

**FILED**

Jan 15 2019, 8:55 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| | |
|---|---|
| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
| Mark A. Kiesler<br>Kiesler Law Office<br>New Albany, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Lyubov Gore<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Arnold Tuell,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 15, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1186<br><br>Appeal from the<br>Orange Circuit Court<br><br>The Honorable<br>Steven L. Owen, Judge<br><br>Trial Court Cause No.<br>59C01-1711-F5-1259 |

**Kirsch, Judge**

[1] Arnold Tuell ("Tuell") was charged with operating a motor vehicle after forfeiture of license for life,[1] a Level 5 felony, and with being a habitual offender.[2] Tuell raises the following issue in this discretionary interlocutory appeal, whether the trial court erred in denying his motion to dismiss the habitual offender charge, which he claims is impermissible because operating a motor vehicle after forfeiture of license for life is a progressive penalty statute that cannot be further enhanced by the general habitual offender statute.

[2] We affirm.

## Facts and Procedural History

[3] On the evening of November 25, 2017, Indiana State Police Trooper Noah Ewing ("Trooper Ewing") was driving on State Road 56 and decided to run the plate of the vehicle in front of him. *Appellant's App. Vol. II* at 10. He learned that Bureau of Motor Vehicle ("BMV") records indicated that the registered owner, Tuell, was a habitual traffic violator for life. *Id.* As Trooper Ewing drove closer to the vehicle, he noticed that the driver was a male with dark hair, which matched information from the BMV records. *Id.* Trooper Ewing activated his emergency lights, and the vehicle stopped. As Trooper Ewing approached the vehicle, he noticed that the driver looked to be the same person depicted in Tuell's BMV photo. *Id.* Tuell admitted to Trooper Ewing that 1)

---

[1] *See* Ind. Code §§ 9-30-10-16, -17.

[2] *See* Ind. Code § 35-50-2-8.

the car was his, 2) that he did not have a license, and 3) that he was a habitual traffic violator. *Id.*

[4] Tuell was arrested and charged with Count 1, Level 5 felony operating a motor vehicle after forfeiture of license for life and Count 2, with being a habitual offender. *Id.* at 22. The habitual offender charging information listed the following prior convictions: 1) January 22, 2008 Daviess County conviction for operating a motor vehicle after forfeiture of license for life, a Class C felony; 2) October 12, 2004 Dubois County conviction for operating a motor vehicle after forfeiture of license for life, a Class C felony; 3) January 7, 2013 Orange County conviction for operating a motor vehicle after forfeiture of license for life, a Class C felony; 4) March 30, 2004 Orange County conviction for operating a vehicle as habitual traffic violator,[3] a Class D felony; and 5) November 4, 1997 Orange County conviction for child molesting, a Class B felony. *Appellant's App. Vol II* at 22.

[5] Tuell filed a motion to dismiss the habitual offender charge. *Id.* at 53-54. At the hearing on the motion, defense counsel argued that the habitual offender enhancement should be dismissed because Tuell was charged with operating a motor vehicle after forfeiture of license for life under a progressive penalty scheme, and a penalty under such a statute could not be further enhanced under

---

[3] As discussed below, this is the conviction that makes Tuell eligible for Count 1, operating a motor vehicle after forfeiture of license for life, and his double enhancement arguments rest, in part, on the State's possible use of this conviction to support its habitual offender allegation in Count 2.

the habitual offender statute. *Tr. Vol. II* at 11-13. In denying the motion, the trial court concluded that the habitual offender charge would not create an impermissible double enhancement. Specifically, it found and concluded as follows:

2. I.C. 35-5-2-8(e) sets forth the limitations on "double enhancement":

(e) The state may not seek to have a person sentenced as a habitual offender for a felony offense under this section if the current offense is a misdemeanor that is enhanced to a felony in the same proceeding as the habitual offender proceeding solely because the person had a prior unrelated conviction. . . .

3. . . . Neither of these apply to this situation.

4. [Tuell] cites *Dye v. State*, 972 N.E.2d 853 (Ind. 2012), *aff'd on reh'g*, 984 N.E.2d 625 (Ind. 2013), as authority that double enhancement is not permitted. In *Dye*, the court held that it was impermissible for the defendant's unlawful possession of a firearm by a serious violent felon conviction to be enhanced further by the general habitual offender statute. On rehearing, the supreme court further clarified that the defendant's habitual offender enhancement was vacated not merely because the serious violent felon statute, a progressive-penalty statute, and the general habitual offender enhancement were simultaneously applied, but more precisely because the past felonious conduct used as the basis for the habitual offender charge *was a part of the same "uninterrupted transaction" on which the serious violent felon charge was based*. *Dye*, 984 N.E.2d at 630.

5. . . . *Woodruff v. State*, 80 N.E.3d 216 (Ind. Ct. App 2017) clarified . . . *Dye*. *Dye* does not stand for the proposition that

whenever *any* two enhancements are applied to an underlying conviction there is an impermissible double enhancement. Rather, *Dye* states that there is a double enhancement issue when more than one of the types of statutes that authorize enhancements for repeat offenders *are applied to the same proof of an "uninterrupted transaction."* Therefore, double enhancement analysis is proper when the proof of previous criminal conduct is the basis of more than one enhancement.

*Appellant's App. Vol. II* at 56-58 (emphasis added).

[6] Upon Tuell's request, the trial court certified its ruling for discretionary appellate review, and on June 22, 2018, we granted Tuell's motion for interlocutory appeal and accepted jurisdiction over this case. *Id.* at 83, 91.

# Discussion and Decision

[7] Tuell contends that the trial court erred in denying his motion to dismiss the habitual offender charge, claiming it subjects him to an impermissible double enhancement. "We review a trial court's ruling on a motion to dismiss a charging information for an abuse of discretion, which occurs only if a trial court's decision is clearly against the logic and effect of the facts and circumstances." *Pavlovich v. State*, 6 N.E.3d 969, 974 (Ind. Ct. App. 2014), *trans. denied*. Here, because the parties do not dispute the facts, we are presented with a question of law to which we apply a de novo standard of review. *See Moss v. State*, 6 N.E.3d 958, 960 (Ind. Ct. App. 2014). In interpreting a statute, the reviewing court heeds both what the statute "does not say" and what it "does say." *State v. Brown*, 70 N.E.3d 331, 334 (Ind. 2017).

[8]     Tuell argues that allowing the State to proceed with the habitual offender charge subjects him to an impermissible double enhancement because he would be simultaneously subjected to two enhancing statutes, the progressive penalty statute of his operating a motor vehicle after forfeiture of license for life charge and the enhancement from the habitual offender charge. Tuell contends that there is no statutory authority for such a double enhancement, citing to *Stanek v. State*, 603 N.E.2d 152 (Ind. 1992). *Appellant's Br.* at 10.

[9]     We look to our Supreme Court's case in *Dye v. State*, 972 N.E.2d 853, 856-57 (Ind. 2012) for guidance on this issue:

> It has long been established that double enhancements are not permissible unless there is explicit legislative direction authorizing them. *E.g., Beldon v. State,* 926 N.E.2d 480, 483-84 (Ind. 2010); *Breaston v. State,* 907 N.E.2d 992, 995 (Ind. 2009); *Mills v. State,* 868 N.E.2d 446, 449 (Ind. 2007) . . . . Whether a particular double enhancement is permissible, therefore, is a matter of statutory interpretation. *E.g., Nicoson v. State,* 938 N.E.2d 660, 663 (Ind. 2010).
>
> There are three types of statutes authorizing enhanced sentences for recidivist offenders: the general habitual offender statute, specialized habitual offender statutes, and progressive-penalty statutes. [*State v.*] *Downey,* 770 N.E.2d [794,] 795-96 [(Ind. 2012)]. The general habitual offender statute, Ind. Code § 35-50-2-8 (2008), authorizes a sentencing enhancement of up to 30 years where the defendant has been convicted of three "unrelated" felonies. *Downey,* 770 N.E.2d at 795. . . . [P]rogressive-penalty statutes, which are the most specialized, elevate the level of an offense (with a correspondingly enhanced sentence) where the defendant previously has been convicted of a particular offense. *Downey,* 770 N.E.2d at 796 . . . Ind. Code §§

9-30-10-16 & -17 (2010) (Class D felony driving while privileges are suspended elevated to Class C felony if defendant has prior conviction for driving while suspended) . . . . Double-enhancement issues arise where more than one of these statutes is applied to the defendant at the same time. *See, e.g., Downey,* 770 N.E.2d at 795-98.

*Dye*, 972 N.E.2d at 856-57.; *see also Dugan v. State*, 976 N.E.2d 1248, 1250 (Ind. Ct. App. 2012); *Shepherd v. State*, 985 N.E.2d 362, 363 (Ind. Ct. App. 2013).

[10] Here, the underlying felony Tuell was charged with -- Level 5 felony operating a motor vehicle after forfeiture of license for life -- is a progressive penalty statute. *Dye*, 972 N.E.2d at 857. "The general rule is that, *absent explicit legislative direction,* a sentence imposed following conviction under a progressive penalty statute may not be increased further under either the general habitual offender statute or a specialized habitual offender statute." *Id.* (emphasis in original).

[11] Tuell rests much of his argument on *Stanek*, 603 N.E.2d at 152, which involved similar facts to the present case. There, Stanek was convicted of operating a motor vehicle after driving privileges are forfeited for life, a Class C felony, and with being a habitual offender. *Id.* at 153. While acknowledging that the habitual offender statute in effect at the time allowed the State to seek a habitual offender enhancement for "any felony," *Stanek* construed the habitual offender statute and Article 12 of Title 9 – the then article on general penalty provisions for motor vehicle offenses -- to hold that the legislature did not intend that a conviction for a Class C felony under Article 12 to be subject to further

enhancement under the general habitual offender statute because it characterized then Article 12 as a "discreet, separate, and independent habitual offender statute." *Id.* at 153-54. Thus, the Supreme Court vacated Stanek's habitual offender enhancement. *Id*. at 154. Tuell argues the same reasoning applies here and that this court should reverse the trial court's denial of his motion to dismiss the habitual offender count.

[12] However, while Tuell aptly observes that the facts in *Stanek* are like his case, he ignores the substantial evolution in double enhancement jurisprudence since *Stanek* was decided, both in case law and the habitual offender statute. As to caselaw, as noted above, many Indiana decisions have held that there is no double enhancement unless more than one of the statutes that authorize enhancements for repeat offenders *are applied to the same felony or the same proof of an "uninterrupted transaction."* *See*; *Mills*, 868 N.E.2d at 452; *Beldon,* 926 N.E.2d at 483; and *Woodruff*, 80 N.E.3d at 218. Similar holdings can be found in *Dugan,* 976 N.E.2d at 1250 and *Shepherd*, 985 N.E.2d at 363. Thus, under this line of cases, there would be no impermissible double enhancement as long as the State does not use the 2004 Orange County conviction for operating a vehicle as habitual traffic violator as a predicate felony for Tuell's habitual offender status. That offense has already been enhanced pursuant to a progressive penalty statute.

[13] As to the habitual offender statute itself, the General Assembly has amended it several times since 1992, when *Stanek* was decided. Subsection (e) of the current habitual offender statute states the following:

> *The state may not seek to have a person sentenced as a habitual offender for a felony offense under this section if the current offense is a misdemeanor that is enhanced to a felony in the same proceeding as the habitual offender proceeding solely because the person had a prior unrelated conviction.* However, a prior unrelated felony conviction may be used to support a habitual offender determination even if the sentence for the prior unrelated offense was enhanced for any reason, including an enhancement because the person had been convicted of another offense.

Ind. Code § 35-50-2-8(e) (emphasis added). The emphasized language in subsection (e) provides explicit legislative direction about when the State may not seek a double enhancement. That language, however, does not bar double enhancement here because Tuell's current offense is not a misdemeanor that was enhanced to a felony in the same proceeding as the habitual offender proceeding solely because of a prior unrelated conviction. Thus, by the plain language of the statute, the circumstances here do not pose the risk of an impermissible double enhancement. Recalling that it is as important to observe what a statute *does not* say as what it *does* say, we find that this language provides explicit authorization for the potential double enhancement with which Tuell has been charged. *See Brown*, 70 N.E.3d at 334.

[14] The legislative history of the habitual offender statute makes it even clearer that the statute provides specific authorization for a potential double enhancement here. When *Stanek* was decided, the habitual offender statute allowed the State to seek a habitual offender status for "any felony." *Stanek,* 603 N.E.2d at 153. The version of the statute effective until June 30, 2014, did not allow the State to seek a habitual offender enhancement on an offense that was already

enhanced under the same statute at issue here, the progressive penalty statue for motor vehicle offenses, Indiana Code sections 9-30-10-16 and -17. That version of the statute stated: "The state may not seek to have a person sentenced as a habitual offender for a felony offense under this section if . . . the offense is an offense under IC 9-30-10-16 or IC 9-30-10-17." Ind. Code § 35-50-2-8 (effective until June 30, 2014). However, the version of the statute that went into effect on July 1, 2014, removed this exclusion. *See* Ind. Code § 35-50-2-8 (effective July 1, 2014). Finally, the current version of the habitual offender statute is consistent with the previous version of the statute; that is, it does not include the prohibition on using the habitual offender enhancement for offenses under Indiana Code section 9-30-10-16 and -17.

[15] These changes to the habitual offender statute convince us even more that the current statute gives explicit authorization for use of the habitual offender enhancement in the ways Tuell seeks to avoid. Over time, the legislature has enacted various iterations of the habitual offender statute, calibrating it one way or another, so we see the narrow exclusion in the current version of the statute as not being arbitrary or arising by happenstance but, instead, a product of the legislature's considered deliberation about what exclusions best fit the needs of our State at this time. Accordingly, the trial court did not abuse its discretion in denying Tuell's motion to dismiss Count 2, the habitual offender charge.

[16] Affirmed.

Vaidik, C.J., and Riley, J., concur..