

**FILED**

Feb 28 2020, 9:27 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Supervising Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Jay A. Rigdon
Rockhill Pinnick LLP
Warsaw, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Plaintiff,*

v.

Cliffton W. Davis,

*Appellee-Defendant*

February 28, 2020

Court of Appeals Case No.
19A-CR-1650

Appeal from the Kosciusko Circuit
Court

The Honorable Michael W. Reed,
Judge

Trial Court Cause No.
43C01-1810-F6-997

**Crone, Judge.**

## Case Summary

Cliffton W. Davis was operating a vehicle in Kosciusko County when he exited a roundabout without signaling a turn. A police officer, believing that Davis's behavior constituted a traffic infraction, initiated a stop of Davis's vehicle. A subsequent search of the vehicle led to the discovery of incriminating evidence and the filing of criminal charges against Davis. Davis filed a motion to suppress that evidence which the trial court granted based upon its conclusion that Davis's failure to signal while exiting the roundabout was not a statutory violation, and therefore the stop of Davis's vehicle was unlawful. The State of Indiana appeals the trial court's order, asserting that the failure to signal when exiting a roundabout is a statutory violation, and even if it is not, the police officer's mistake of law in this case was reasonable and therefore the stop was constitutionally valid. For reasons that we will explain fully in our discussion, we affirm the trial court's suppression order.

## Facts and Procedural History

On September 21, 2018, Officer Ross Minear of the Warsaw Police Department was traveling eastbound on West Lake Street, approaching a three-spoke, or three-exit, roundabout at the intersection of West Lake Street and Fox Farm Road. Tr. Vol. 2 at 7-8, Ex. A. Officer Minear observed a vehicle driven by Davis exit the roundabout to head westbound on West Lake Street.[1] Davis did not signal his exit from the roundabout. Officer Minear initiated a traffic stop

---

[1] Officer Minear did not observe Davis's vehicle enter the roundabout. He observed only the exit.

of Davis's vehicle based upon the failure to signal. Officer Minear believed that Davis's behavior constituted a traffic infraction because he had "always [been] instructed that you needed to signal for exiting a roundabout." *Id*. at 11.

[3] After Davis stopped his car, Officer Minear saw Davis bend over "as if attempting to conceal something inside the vehicle." Appellant's App. Vol. 2 at 9. When Officer Minear approached the vehicle, he also noticed that Davis was nervous and "sweating profusely." *Id*. Officer Minear asked Davis to exit the vehicle, and as he exited, Officer Minear saw Davis throw a digital scale onto the floorboard of the vehicle. This led to a search of the vehicle, during which officers discovered that there was residue on the scales which field-tested positive for methamphetamine. The officers also found a plastic bag with residue, two glass smoking devices, and multiple other plastic bags. Because Davis "appeared to be under the influence of illegal drugs," he was transported to the hospital for a blood draw. *Id*.

[4] The State charged Davis with level 6 felony possession of methamphetamine, class C misdemeanor possession of paraphernalia, and class C misdemeanor operating while intoxicated. Thereafter, Davis filed a motion to suppress the evidence seized as a result of the traffic stop of his vehicle arguing that the stop was unlawful. Following an evidentiary hearing, the trial court granted the motion, concluding that the State had failed to prove that Davis violated the Indiana statute regarding turn signals, Indiana Code Section 9-21-8-25, and therefore Officer Minear did not have reasonable suspicion to initiate a traffic stop of Davis's vehicle. Accordingly, the trial court concluded that all evidence

obtained as a result of the unlawful stop should be suppressed.  The State now appeals.

## Discussion and Decision

In this appeal, we must resolve what we perceive to be a vexing question for many Hoosier drivers:  Does a motorist violate current Indiana traffic regulation law by not signaling a turn when exiting a roundabout?  In short, the answer is no.

We begin by noting that the State appeals following the trial court's grant of Davis's motion to suppress evidence, which effectively terminated the prosecution of this case.[2]  Because the State appeals from a negative judgment, it bears the burden to show that the trial court's suppression ruling was contrary to law. *State v. Brown*, 70 N.E.3d 331, 335 (Ind. 2017). When reviewing a trial court's suppression ruling, we determine whether the record contains substantial evidence of probative value that supports the trial court's decision. *Id*. "We evaluate the trial court's findings of fact deferentially, neither reweighing the evidence nor reassessing the credibility of the witnesses." *Id*. However, we review the trial court's conclusions of law de novo, giving no weight to the legal analysis below. *Sanders v. State*, 989 N.E.2d 332, 334 (Ind. 2013).

---

[2] Indiana Code Section 35-38-4-2(5) permits the State to appeal from "an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution …."

"Traffic stops, for even minor violations, fall within the protections of the federal and state constitutions." *Marshall v. State*, 117 N.E.3d 1254, 1258 (Ind. 2019), *cert. denied*. When a law enforcement officer stops a vehicle for a suspected traffic infraction, that officer seizes the vehicle's occupants under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution, and that traffic stop must pass constitutional muster. *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009) (Fourth Amendment); *State v. Quirk*, 842 N.E.2d 334, 339-40 (Ind. 2006) (Article 1, Section 11). To avoid any potential constitutional violation, the officer conducting the stop must have had a "reasonable suspicion" at the time of the stop that some traffic law or ordinance had been violated. *Meredith*, 906 N.E.2d at 869. To deter violations of the constitutional protections against unreasonable searches and seizures, evidence obtained in violation of those protections is not admissible in a prosecution of the citizen whose right was violated. *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013). The State has the burden of demonstrating the admissibility of the evidence collected during a seizure or search. *Id*.

At specific issue in this case is the traffic regulation statute that Officer Minear relied upon to justify the stop of Davis's vehicle which provides in pertinent part: "A signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before

turning or changing lanes." Ind. Code § 9-21-8-25.[3] Davis traveled through a roundabout and then exited the roundabout without signaling a turn. Accordingly, we must determine whether this behavior constituted a violation of Indiana Code Section 9-21-8-25. We think not.

[9] The parameters of Indiana's current turn signal law have not often been discussed.[4] Another panel of this Court has determined that Indiana Code Section 9-21-8-5 requires that a motorist use a turn signal even when turning from a parking lot onto a street because "there are no restrictions that it only applies in certain situations or on certain roadways." *Datzek v. State*, 838 N.E.2d 1149, 1155 (Ind. Ct. App. 2005), *trans. denied* (2006). But that holding is not particularly instructive for the specific set of facts currently before us. Indeed, although Indiana Code Section 9-21-8-25 would presumably apply to all roadways, including roundabouts, as roundabouts are not specifically excluded from its ambit, we must recognize that this signaling provision was drafted well before roundabouts became widespread in our state. Moreover, any

---

[3] A person who violates this statute commits a class C infraction. Ind. Code § 9-21-8-49.

[4] When referring to our "turn signal law" or "the signaling statute," we are referring only to Indiana Code Section 9-21-8-25. We note, however, that Indiana Code Section 9-21-8-24 also mentions signaling as follows:

> A person may not:
>
> (1) slow down or stop a vehicle;
>
> (2) turn a vehicle from a direct course upon a highway; or
>
> (3) change from one (1) traffic lane to another;
>
> unless the movement can be made with reasonable safety. Before making a movement described in this section, a person shall give a clearly audible signal by sounding the horn if any pedestrian may be affected by the movement and give an appropriate stop or turn signal in the manner provided in sections 27 through 28 of this chapter if any other vehicle may be affected by the movement.

assumption that the signaling statute specifically applies to roundabouts fails to withstand scrutiny when the reality and logistics of roundabouts are considered.

[10]     Indiana law defines "roundabout" as "a circular intersection or junction in which road traffic flows almost continuously in one (1) direction around a central island." Ind. Code § 9-13-2-157.5. Other than defining roundabouts, our legislature has enacted few traffic regulation statutes that expressly address roundabouts. For instance, our legislature has mandated that "[a]vehicle passing around a roundabout shall be driven only to the right of the roundabout's central island." Ind. Code § 9-21-8-10. Moreover, our legislature has reserved the right-of-way in roundabouts for vehicles with a total length of at least forty feet or a total width of at least ten feet. Ind. Code § 9-21-8-10.5. This is where this roundabout guidance, both literally and figuratively, begins and ends.

[11]     We agree with the State that when motorists are entering a roundabout, they are simply following the roadway and continuing along the natural flow of the road, similar to when coming upon a curve in the road. Accordingly, it would be nonsensical to read the current turn signal statute as requiring motorists to activate their right-turn signals when entering a roundabout, especially if they simply mean to travel in a continuous lane and move through the roundabout. In that circumstance, the driver is not making a choice between alternatives that other motorists need to be alerted to for safety purposes; the driver is neither turning nor changing lanes, so there is nothing to signal.

[12] However, when the act of exiting a roundabout, as involved here, is considered, application of our current signaling law becomes even more problematic. As noted by the State, exiting a roundabout requires the driver to deviate from the natural circular flow of the roundabout. The driver must make a choice between various points of exit, a choice to which other motorists should arguably be notified. But, based upon our current turn signal law, how and when would a motorist be required to signal his exit from a roundabout? This simple question only generates more questions which demonstrate that our current turn signal statute is completely unworkable in this context.

[13] Must a motorist signal when exiting the roundabout intersection, even when he has traveled straight through and is proceeding in the same direction on the same street upon which he entered? Would that be considered a "turn," or does a "turn" occur only when a motorist chooses to take an exit onto a different street? Does exiting a roundabout, which often involves the driver simply veering to the right, involve a "turn," or does it depend upon the angle of the exit and the degree to which the driver must rotate his steering wheel? *See* *United States v. Smith*, 668 F.3d 427, 431 (7th Cir. 2012) (noting that Ind. Code § 9-21-8-25 does not define "turning" but concluding based upon common dictionary definition that a "roughly 120-degree right" turn was a sufficient "rotat[ion]" to constitute a turn). Must a motorist always use a right signal when exiting a roundabout, or is a left signal required in some circumstances? Moreover, it would only make sense from a safety standpoint for a motorist to signal a turn, whether it be right or left, immediately upon passing the exit just

prior to the desired exit. However, our current law requires motorists to signal continuously during not less than the last 200 feet traveled before turning or changing lanes. The State concedes in its brief that the turn signal statute cannot be read as requiring drivers to signal a turn prior to entering a roundabout. As a consequence, the statute as written does not apply. We can say with confidence that the entrances and exits of most roundabouts are much less than 200 feet apart, so it would be impossible to comply with the statute in those circumstances.[5]

[14] These issues barely scratch the surface, as in those Indiana counties that have become heavily saturated with roundabouts, such as Hamilton County,[6] there are numerous different roundabout varieties and configurations, including single-lane and multi-lane, each with differing dimensions and posted lane restrictions. All of this convinces us that Indiana Code Section 9-21-8-25 is a

---

[5] In order to have at least 200 feet between exits, a standard circular roundabout with four exits would have to be approximately 255 feet, or 85 yards, in diameter, not accounting for the additional width of the exit roadways. Such a roundabout would encompass more than 1.17 acres.

[6] We note that Carmel, Indiana, touts itself as the "Roundabout Capital of the U.S.," with over 125 roundabouts, more than any other city in the United States. *Roundabouts,* CITY OF CARMEL INDIANA, http://carmel.in.gov/department-services/engineering/roundabouts [https://perma.cc/4AXV-J3HR].

square peg that cannot fit into the roundabout hole.[7]  In other words, as the law now stands, roundabouts are intersections to which the current turn signal statute simply cannot and does not apply. Any other conclusion would run counter to the statute's underlying policy, which is "to facilitate safe automobile traffic." *Datzek*, 838 N.E.2d at 1155.

[15]  With the foregoing considerations in mind, we observe that it is for the Indiana General Assembly, and not this Court, to promulgate specific rules and regulations regarding the use of turn signals in roundabouts, and we encourage it to do so.  Because Indiana Code Section 9-21-8-25 is inapplicable to roundabouts, we hold that Davis did not violate that statute when he did not signal a turn when exiting the roundabout in this case.

[16]  Nevertheless, the State directs us to *Heien v. North Carolina*, 574 U.S. 54 (2014), and urges that we treat Officer Minear's stop of Davis's vehicle as valid for

---

[7] Other states are dealing with this same problem.  As observed by the Alaska Court of Appeals, because of the substantial difficulties in trying to apply existing turn-signal regulations to roundabouts, most states "have simply adopted an ad hoc approach—not amending their codified law, but instead creating web sites and informational pamphlets that contain instructions to motorists about the signals they should use when negotiating a roundabout (even though these instructions are apparently not based on the codified law)." *Noble v. State*, 357 P.3d 1201, 1204 (Alaska Ct. App. 2015).  It appears that Indiana is currently in this camp. In a section entitled "How to Drive a Roundabout," the Indiana Department of Transportation instructs as follows: "**Enter**: •Wait for traffic in the roundabout; it has the right-of-way  •When traffic clears, merge to the right and continue to stay in your lane … **Exit**: •Signal and exit to the right •Left turns are completed by circling around the center island and then making a right turn to exit." *Roundabouts,* INDIANA DEPARTMENT OF TRANSPORTATION, www.in.gov/indot/3249.htm [https://perma.cc/L7XT-3GX4].  The current Indiana Driver's Manual defines a roundabout as "a circular intersection in which traffic enters or exits only through right turns and proceeds in a counter-clockwise direction." *Indiana Driver's Manual, Chapter 5 - Safe Vehicle Operation,* INDIANA BUREAU OF MOTOR VEHICLES, www.in.gov/bmv/2831.htm [https://perma.cc/9Q9D-YSKA].  The manual makes no mention of the necessity, or lack thereof, to signal right when entering or exiting.  At least one state, however, has enacted specific legislation that expressly governs signal use in roundabouts.  *See* Oregon Rev. Statute § 811.400.

suppression purposes. In *Heien*, the United States Supreme Court addressed whether a police officer's mistake of law can give rise to the reasonable suspicion necessary to uphold a seizure under the Fourth Amendment. The Court determined that "reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition." *Id*. at 60. But "[t]he Fourth Amendment tolerates only reasonable mistakes, and those mistakes—whether of fact or of law—must be objectively reasonable. We do not examine the subjective understanding of the particular officer involved." *Id*. at 66. If a mistake of law is reasonable, there is reasonable suspicion justifying the stop. *Id*. at 68.

[17] The State maintains that, even assuming Officer Minear was mistaken in his belief that Davis violated Indiana Code Section 9-21-8-25, his mistake of law was objectively reasonable. In other words, the State argues that it was objectively reasonable for an officer in Officer Minear's position to think that Davis's failure to signal his exit from the roundabout was a violation of Indiana law. However, based upon the evidence presented at the suppression hearing, the trial court concluded that the State failed to prove that Officer Minear's mistake in this case was objectively reasonable, and therefore Officer Minear lacked reasonable suspicion justifying the stop.[8] When reviewing a trial court's suppression ruling, we defer to the trial court's factual determinations, neither

---

[8] Although the trial court's suppression order does not specifically address this issue, the State clearly made this argument to the trial court, and the court's grant of Davis's motion to suppress implicitly rejected the State's position.

reweighing the evidence nor reassessing the credibility of the witness. *Brown*, 70 N.E.3d at 335. Accordingly, we defer to the trial court's determination on this issue. *See Clemons v. State*, 996 N.E.2d 1282, 1287 (Ind. Ct. App. 2013) (noting that whether a belief is objectively reasonable under the circumstances is a question of fact). In sum, the State has not met its burden to show that the trial court's grant of Davis's motion to suppress evidence was contrary to law. Therefore, we affirm the suppression order.

[18] Affirmed.

May, J., and Pyle, J., concur.